N. GADMER v. MARY ELLEN CORCORAN LENT AND C. E. LENT Appellants, and THE DES MOINES INSURANCE COMPANY.

AGENCY—EVIDENCE—*Payment of Liquor Debt.*

*Appeal from Pocahontas District Court.*—HON. LOT THOMAS, Judge.

SATURDAY, APRIL 10, 1897.

ACTION to foreclose mortgage. The defendants, in their answer, allege that part of the consideration was the purchase of intoxicating liquors, and that the plaintiff is not a *bona fide* holder of the note and mortgage The loss occasioned by the burning of the house was paid by the insurance company into court, to be disposed of in the decree. There was a decree for plaintiff, as prayed, and defendants Lent appeal.—*Affirmed.*

*Botsford, Healy & Healy* for appellants.

*Stevenson & Lavender* for appellee.

LADD, J.—The defendants Mary Ellen Corcoran Lent and G. E. Lent, executed the note for two hundred and fifty dollars, on which this action is brought, to G. E. Hughes, and the mortgage on their house and lot securing the payment thereof, November 11, 1893. The house was insured, and the loss, if any, made payable to the mortgagee as his interest might appear. It burned in 1894, and the loss adjusted at one hundred and seventy-five dollars, was left, in pursuance of a stipulation, with the clerk, to be disposed of in the decree. The defendants claim that, of the consideration, one hundred and forty-seven dollars was for the purchase of a stock of intoxicating liquors at Tripp, S. D., while the plaintiff says that the entire consideration was for money loaned and the expenses of preparing the papers. The evidence conclusively shows that G. E Hughes did not own the stock at Tripp, but that it was the property of Samuel Hughes. It is insisted, however, that G. E. Hughes acted as the agent of Samuel. Und ubtedly, he talked with Lent about the purchase, but the evidence shows that Lent wrote to Samuel about the opportunities at Tripp, and of the extent of the business there, and went out to see him. As soon as he had arranged for the money, he telegraphed to Samuel to turn the goods over to Ollie, and come to Fonda on the first train. When the loan was completed, G. E. Hughes retained the one hundred and forty-seven dollars Lent had agreed to pay his father, Samuel Hughes, and paid it to the latter. The evidence regarding these transactions is conflicting, but it establishes this state of facts when fairly considered. The one hundred and forty-seven dollars was borrowed for and used to buy the stock, but the stock was not owned by G. E. Hughes, and was not bought of him, and the evidence does not show that he was the agent of Samuel Hughes in the transaction. This conclusion renders it unnecessary to consider the other questions argued.—AFFIRMED.